CHARLES E. TREFETHEN, and another, In Equity,

*vs.*

ERI V. LYNAM, and others.

Cumberland.    Opinion May 31, 1897.

*Husband and Wife.    Fraudulent Conveyance.    Burden of Proof.    R. S., c. 77, §*
*6, cl. X.*

The court will scrutinize thoroughly, and even with suspicion, the transfer of
means and earnings by husbands to their wives however innocent any such
transaction may appear, when the effect of the transfer is not for the
support of the family, but to put them beyond the reach of creditors.   The
wife will not be allowed as against creditors to absorb the debtor husband's
property under the cover of family support.

When a husband appropriates his own money to erecting buildings upon his
wife's land with her consent, the increment of value thereby created can be
taken by his prior creditors through proceedings in equity, even though there
was no actual intent to defraud such creditors.

When a wife receiving from time to time her husband's income first invests it
in her separate business, and then pays the family expenses out of that busi-
ness, the burden is upon her, as against his prior creditors, to show affirma-
tively the amount actually consumed in such expenses.

In such accounting the wife cannot be allowed for rent of her real estate occu-
pied by the family, at least in the absence of a pre-existing agreement by the
husband to pay rent.

IN EQUITY.   ON APPEAL.

This was an equitable trustee process, under R. S., c. 77, § 6, cl.
X, heard in the court below on bill, answers  and proofs,' and
where the bill was dismissed.   The plaintiffs appealed to this
court.

One of the principal portions of the decree appealed from is as
follows:

"That as Mrs. Lynam owned the real estate, she was entitled to
its income, and might justly appropriate to herself from her hus-
band's remittances an amount equal to a fair rental of the premises
occupied by her husband's family, which were owned by her; and
that  the amounts remitted to her by her husband have not

exceeded the amount expended for the support of his family, and the fair rental of the premises occupied by his family."

The case is stated in the opinion.

*Benj. Thompson*, for plaintiffs.

*J. A. Peters, Jr.*, for Mrs. Lynam and R. E. Campbell.

Burden of proof on plaintiffs: *Stratton* v. *Bailey*, 80 Maine 345; *Metcalf* v. *Metcalf*, 85 Maine, 473.

It would be harsh and inequitable to hold the wife to a strict keeping of accounts with her husband, no fraud being claimed and the wife having no reason for thinking that an account would ever be needed. Business men expect settlements; a husband does not require it of his wife.

Rent: As between husband and wife it is not necessary to decide that rent can be charged and collected. But in equity, as against creditors, a wife living by force of necessity practically apart from her husband, on her own homestead, is entitled to appropriate from her husband's remittances a fair sum for the premises occupied by herself and her husband's children. The husband is certainly bound to provide both a home and a living to wife and children. If this house should burn down and the wife and family move into the house of a stranger, the husband would be liable for the rent. If he should send home money for expenses she could certainly appropriate a portion for rent.

By the laws of this state a married woman is entitled to the total income and use of her own property, even as against her husband. If, as against creditors of her husband, she cannot appropriate from moneys sent by him for general family expenses, a fair sum for use of her property, then she does not get the whole benefit and income of it; but the creditors of the husband get it.

While this proposition is correct, it is incidental to the issue, as outside of rent, all remittances by the husband were required for the support of the family.

Cases cited by counsel for plaintiff contain either a strong element of fraud, interest acquired by husband furnishing part of purchase money, or by breach of trust on part of wife, or by contract, express or implied, between husband and wife.

Husband's improvements on wife's land cannot be taken by his creditors, except in cases of fraud: *Webster* v. *Hildreth*, 33 Vt. 457, (78 Am. Dec. 632); *Robinson* v. *Huffman*, 15 B. Monroe, 80, (61 Am. Dec. 177); *Eilers* v. *Conradt*, 39 Minn. 242, (12 Am. St. Rep. 641); *Lewis* v. *Johns*, 24 Cal. 98, (85 Am. Dec. 49); *Phillips* v. *Hall*, 28 Atl. Rep. (Pa.) 502; *Smith* v. *Reber*, 18 Atl. Rep. 462, (N. J. Eq.); *Peck* v. *Brummagim*, 31 Cal., 440, (89 Am. Dec. 195 and notes); *Lynde* v. *McGregor*, 13 Allen, 182, and note in same (90 Am. Dec. 188).

Money and labor expended voluntarily by husband upon his wife's land gives him no right, title or interest therein: *Holmes* v. *Waldron*, 85 Maine, 312; *Humphreys* v. *Newman*, 51 Maine, 40; *Burleigh* v. *Coffin*, 22 N. H. 118, (53 Am. Dec. 236); *Marable* v. *Jordan*, 5 Humphreys, 417, (42 Am. Dec. 441 and note); *Pierce* v. *Pierce*, 25 Vt. 511.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WIS-WELL, JJ.

EMERY, J. From the documents and the testimony of the various defendants themselves, the following facts appear to be practically undisputed.

In 1859, the defendant, Linda M. Lynam (then Linda M. Clement) was the owner by inheritance from her father of a homestead at Seal Harbor, Mt. Desert, and was living upon it with her mother. In that year she married the defendant, Capt. Eri V. Lynam, and the pair began married life upon this homestead and their home has been upon it ever since. The family has consisted of Mr. and Mrs. Lynam, their children and Mrs. Lynam's mother. In 1882, the defendant Robert E. Campbell married a daughter of the other two defendants and lived with her upon the same homestead as a member of the family. Capt. Lynam's occupation was that of a master mariner and he was absent most of the time after 1874 upon foreign voyages.

In 1883, Mrs. Lynam and her son-in-law Campbell began the enterprise of building and running a summer hotel on her place.

One hotel building was erected and furnished in 1884 and a second one in 1887. The money was raised by notes of Mrs. Lynam and her mother, Mrs. Clement, secured by a mortgage of the homestead. In this way money was borrowed as follows: In 1883, $4000 at 8 per cent; in 1884, $6600 at 8 per cent; in 1887, $1500 at 8 per cent, amounting to $12,100. In addition to the above, $2500 were borrowed on note alone at seven per cent in 1887. The business was managed by Campbell for himself and Mrs. Lynam under the name of Lynam & Campbell. Mrs. Lynam and a minor daughter worked in and about the hotel during the season at least. The interest on the loans, aggregating over $1000 annually, and occasionally small sums upon the principal were paid from year to year up to 1892. A $1000 payment was made in 1889, and another $1000 payment in 1893. In 1894, some of the property of Mrs. Lynam was sold to one Cooksey and from the proceeds of that sale the various mortgages were finally paid that year.

During all this time Capt. Lynam was away at sea, coming home at infrequent intervals and for short stops only. From time to time he remitted sums of money to his wife, the different remittances varying in amount from $50 to $500. They were usually by draft or cheque. In making these remittances Capt. Lynam gave no directions as to what should be done with the money. He seems to have left its disposition entirely to his wife's discretion. The remittances, with but few if any exceptions, were turned over by Mrs. Lynam to Mr. Campbell and by him deposited in the bank to the credit of Lynam & Campbell,—in the same account with the hotel business. One draft of $350 was sent direct to Mr. Campbell who deposited it to the same account. The aggregate amount of these remittances is much in dispute. The respondents admit that they averaged $700 yearly. The plaintiffs claim that they were nearer $1200 per year. There seems to be no exact account of the amount, and it is to be largely determined by inference from circumstances.

As stated above, nearly all the remittances, whatever the amount, were turned into the funds of Lynam & Campbell. Out

of these funds of Lynam & Campbell, were paid the hotel expenses, the interest on the notes, the partial payments upon the principal, and also the family expenses of the Lynam and Campbell families who were living together. No accounts were kept, and both Mrs. Lynam and Mr. Campbell are utterly unable to state the amount expended for either or both families. The two families comprised five persons, Mrs. Lynam, her mother, and an unmarried minor daughter, with Mr. and Mrs. Campbell. Nor were any accounts kept of the hotel business; but both Mrs. Lynam and Mr. Campbell say there was little or no profit in it. Mrs. Lynam says there was a loss.

At a period about midway between the years 1874 and 1883, Capt. Lynam, with his wife's consent, built a stable on the homestead expending thereon about $300 of his own money. He does not claim to have built the stable with his own labor and as he was away at sea the greater part of the time after his marriage, it is a fair inference that the stable was built out of his money.

But all this while, and as early as 1874, Capt. Lynam was indebted to the plaintiffs in a sum of over $1500, with interest, which he has never paid any part of and has had no property in his name with which to pay it. This indebtedness (now in the form of a judgment) does not seem to have been known to Mrs. Lynam or Mr. Campbell till 1889.

The plaintiffs now bring this bill in equity in the nature of an equitable trustee process under R. S., c. 77, § 6, cl. X, to reach and apply to their judgment the money of Capt. Lynam thus appropriated or used in the improvement of Mrs. Lynam's property, and in her business enterprise. They claim that they have shown a direct appropriation of their debtor's money to the erection of the stable, which they say ought, in equity at least, to be appropriated to his debts. While they do not claim to have shown any direct appropriation of any specific sum of their debtor's money to the payments on the hotel erections, they do claim they have shown a general appropriation of nearly all his earnings by the business association of Lynam & Campbell, and their incorporation into the fund from which that concern paid the interest, and

some parts at least of the principal of the hotel mortgages. They further claim that having shown this, the burden is on the respondents to show that the debtor's money thus taken was in fact expended for his family's suitable maintenance, and that they have failed to do this and hence should submit to its re-appropriation for his debts.

The justice hearing the cause, in the first instance, did not sustain these claims of the plaintiffs, but dismissed the bill upon the following grounds among others: (1) as to the stable, that it was built without any understanding between Capt. Lynam and his wife as to its ownership, and so became a part of the wife's realty with no legal or equitable title thereto left in him; (2) that Mrs. Lynam was entitled to deduct from her husband's remittances a fair rental for her homestead occupied by their family; (3) that (making the above allowance for rent) it did not appear that any appreciable or ascertainable part of Capt. Lynam's remittances was in fact applied to his wife's property or business. The justice seemed to put on the plaintiffs the burden of showing such specific application. He also seemed to intimate that there was or might be a surplus if the rent were excluded.

On account of the intimacy of the marriage relation the husband and wife cannot ignore the creditors of either to the extent that two strangers might. A debtor's wife receiving her husband's earnings may entirely consume them in the suitable support of his family including herself, without becoming in any way answerable to his creditors. She has no right, however, as against his prior creditors to appropriate her husband's earnings or income to making investments in her own name either for him or herself,— or to keeping down or paying off encumbrances on or otherwise improving her own property,—or to paying the debts or increasing the profits of her separate business. Nor can she rightfully retain, as against them, the value of permanent additions voluntarily made by him to her property. Outside of the statute exemptions he cannot acquire any property which shall be free from the claims of prior creditors; nor can she acquire such property out of his principal or income. Whenever it appears that she has thus

absorbed his money or estate, she can be compelled to account for it by this equitable trustee process. The prior creditor of the husband need not show an actual fraudulent intent on the part of either husband or wife. It is enough for him to show that the wife has acquired some property or value out of her husband's unexempted principal or income. This value thus obtained should be restored by her for the payment of his prior debts, though the husband or his representatives might have no legal or equitable claim to such restoration. The wife may owe a duty of restoration to her husband's prior creditors without owing any such duty to him. These propositions are deducible from the following cases. *Call* v. *Perkins*, 65 Maine, 446; *Sampson* v. *Alexander*, 66 Maine, 182; *Robinson* v. *Clark*, 76 Maine, 494; *Lane* v. *Lane*, 76 Maine, 526; *Stratton* v. *Bailey*, 80 Maine, 345; *Merrill* v. *Jose*, 81 Maine, 22; *Berry* v. *Berry*, 84 Maine, 541.

I. It is undisputed that Capt. Lynam, while in debt to the plaintiffs and having no visible property of his own, directly expended with his wife's consent some $300 of his own money in making a permanent, visible, appreciable addition to his wife's estate and to its value,—not merely keeping up the estate, or carrying it on, but adding to it. This addition (stable) became a part of the wife's realty and Capt. Lynam himself, as found by the justice of the first instance, may have no right in it, or to re-imbursement for it.

Under the principles above stated, however, the husband's right is not the test of his prior creditors' right. As to them, neither husband nor wife can erect buildings on her land with his money, and retain the benefit. In the absence of fraudulent intent or active participation upon the part of the wife, it might not be equitable to require her to account for the full sum thus substracted from her husband's means and appropriated to her property, since the benefit to her estate might not be so much; but she should not retain any benefit, or increment in value of his estate made at the expense of her husband's prior creditors. To turn over to those creditors the benefit or increment, if any, thus obtained would cause her no loss of her own property, but would

simply transmit some part of the husband's property to his creditors,—a most equitable proceeding.

II. It is undisputed that Capt. and Mrs. Lynam and their family lived upon her homestead. It does not appear, however, that there was ever any agreement or understanding between them for the payment of rent by him to her therefor. Without expressing an opinion upon the effect of such an agreement if its existence were shown, it may be safely said that in the absence of that agreement the wife has no right to such rent from the husband. It is true the wife may, at her will, manage and dispose of her own property including her homestead upon which the family live. She may lease it to other parties and recover and retain the rent, but while she occupies it herself with her husband and family she cannot, at least in the absence of any agreement, require the husband to pay to her rent therefor. The relation between them as to such occupancy is that of husband and wife uniting to make a common home. The relation of landlord and tenant is not to be inferred or implied. The occupation is that of both. *Southworth* v. *Edmands,* 152 Mass. 203. There are doubtless numberless instances in this country where the husband and wife and family are living upon a homestead owned by the wife; yet no case has been found of a claim made in the courts by the wife against the husband or his estate for the rent, in the absence of an agreement. This circumstance is strong against the validity of such a claim.

If the wife cannot insist on such rent, as against her husband or his estate, it follows that she cannot insist upon it as against his creditors. Her husband's indebtedness does not create for her a new right in his property.

III. A wife simply keeping her own and her husband's home and family need not account to her husband's creditors for any part of his income received by her, so long as it does not appear that she is using any part of it for her separate profit. In this case, however, it does affirmatively appear that the wife with a business associate was engaged in a business for her own profit entirely apart from her husband, and that all or nearly all of her husband's

remittances were, in the first instance, turned into this business, to the account of Lynam & Campbell. The support of the families of both was drawn indiscriminately from the funds of the business. This procedure was certainly unjust to her husband's creditors,— this subjecting their debtor's income, not solely to the support of himself and family, but to the risk of a business from which he was in no event to derive any profit or increase of estate. At least, it has put on the wife and her business partner the duty of showing affirmatively that such absorption of her husband's income into her property and business worked no wrong to his creditors,—that an equivalent sum was properly and actually consumed by the husband's family. This they have not done. At the most they only give a guess.

It is urged, at this point, that the justice of the first instance has found this to be the fact, and that his finding of fact is not to be reversed unless clearly wrong. We do not understand the justice to have found this specific fact. His finding was general, including both law and fact. He seemed to concede that the Lynam family expenses alone, not counting rent, might not have consumed the remittances. He made much account of the rent in arriving at his conclusion.

The lamentable tendency of so many debtors to transfer their means and earnings to their wives' possession or to expend them upon their wives' property, not for the support of the family, but to store them away from the reach of their creditors, renders it necessary for the courts to scrutinize thoroughly, and even with suspicion, any such transaction however innocent it appear on the surface. The wife must not be allowed to absorb the debtor husband's property under the cover of family support. *Robinson* v. *Clark*, 76 Maine 494; *Seitz* v. *Mitchell*, 94 U. S. 580. Applying that scrutiny to this case, we are satisfied that at least fifteen hundred dollars of the debtor husband's earnings have been used in additions and improvements upon the wife's real estate with her consent, by which her estate has been increased in value to that full amount.

The plaintiffs are entitled to judgment and execution for that

amount and costs against the debtor husband and the defendant wife, to be applied to their former judgment against the husband. The defendant Campbell does not appear to have any interest in the property, and hence the bill should be dismissed as to him but without costs.

*Decree below reversed.*

*New decree in accordance with this opinion.*