The plaintiff, at May Term, 1908, of CATAWBA, obtained a judgment against J. O. Moore, one of the defendants, for $300 and costs in a suit for damages for malicious prosecution. At the time the judgment was taken the defendant J. O. Moore owned a tract of land in Alexander County. He gave notice of appeal from the said judgment to this Court, being allowed time within which to perfect such appeal, which *Page 365 
appeal was not, in fact, prosecuted. Before the time for perfecting said appeal had expired, and before the plaintiff caused a transcript of said judgment to be docketed in Alexander County, the defendant J. O. Moore, his wife, Dora Moore, joining him, executed a mortgage on the land in Alexander County to secure the payment of $2,000 borrowed from the mortgagee. The defendants, with the $2,000 so borrowed, (464) erected a residence on a lot in the city of Hickory, the title to which was in the defendant Dora Moore. The feme defendant had actual notice of the suit, and of the judgment taken therein, before the execution of the mortgage and the use of the $2,000 in the erection of the dwelling-house on her lot. At the time of the transaction the defendant J. O. Moore was insolvent. After plaintiff had exhausted his legal remedies by execution and supplemental proceedings, he instituted this proceeding for equitable relief.
The jury returned the following verdict:
1. Did defendant J. O. Moore dispose of all of the lands owned by him, and expend the bulk of the proceeds therefrom in the erection of permanent improvements on lands of the defendant Dora Moore, for the purpose of defeating or delaying or defrauding the payment of the plaintiff's judgment against him, referred to in the complaint? Answer: No.
2. If so, did the defendant Dora Moore have knowledge of such purpose on the part of her husband, and participate in the alleged fraud of her husband, as set out in the first issue? Answer: No.
3. What is the value of the lot of land owned by Dora Moore, independent of the improvement placed on it by the money of her husband? Answer: $600.
4. What amount of money of J. O. Moore, referred to in the first issue, was expended upon the lot of Dora Moore with her consent? Answer: About $2,000.
Upon the verdict, the court rendered the following judgment:
"This cause coming on before the undersigned and a jury, and the jury having found the third and fourth issues in favor of the plaintiff; and the male defendant, as it appears from the record, being indebted to the plaintiff in the sum of $300 and costs, $48.15; It is, therefore, upon the whole record, considered and adjudged that the plaintiff recover of the defendant J. O. Moore $348.15 and the costs of this suit. It is further considered and adjudged that the value of the lot owned by the defendant Dora Moore, in her own right, independent of the interests of her husband in the house and lot is $600. It is further considered and adjudged that the interest of the defendant J. O. Moore in the house and lot described in the complaint is $2,000, and that said sum was expended by J. O. Moore on the said lot (465) *Page 366 
of his wife, with her consent, in making improvements thereon, from his own moneys, and the said wife holds her said lot subject to the equity in the same of her husband in the sum of $2,000, to be pursued by the plaintiff as he may be advised."
Defendants appealed.
After stating the case: We entertain no doubt as to the plaintiff's right to follow the fund invested by his debtor in improvements upon his wife's land. No principle is better settled by our decisions than the one that an insolvent debtor cannot withdraw money from his own estate and give it to another to be invested by him in the purchase or improvement of his property, and when it is done, creditors may subject the property so purchased or improved to the payment of their claims. Guthrie v. Bacon, 107 N.C. 338, and cases cited; McGillv. Harman, 55 N.C. 179; Gentry v. Harper, ib., 177. The doctrine is well stated and applied in Burton v. Farinholt, 86 N.C. 260, by Justice Ruffin, as follows: "The life policy in question was the property of the plaintiff's intestate. As soon as delivered, it vested in him, and, like any other chose in action, became an integral part of his estate, subject to every rule of property known to the law. Being indebted, to a state of clear insolvency, at the time of its voluntary assignment to his daughters, his act was fraudulent as to his creditors and void in law, whether made with an intent actually fraudulent or not. It is a principle of the common law as old as the law itself, and upon which the preservation of all property depends, that, except so far as the same may be exempt by positive law, the whole of every man's property shall be devoted to the payment of his debts. He cannot gratuitously give away any part of it, the law meaning that he shall be just to his creditors before he is generous to his family. From the fact that he was at the time insolvent, and that his transfer to his daughters was without (466) valuable consideration, it results, as a conclusion of law, that the assignment was void as to his creditors. As said in Gentry v.Harper, 55 N.C. 177, it is against conscience for debtors to attempt in any way to withdraw property or effects from the payment of debts; and if the courts of law cannot reach the debtor's interest, a court of equity will." More apposite is Pender v. Mallett, 123 N.C. 57, in which the present Chief Justice says: "If she were not a free trader, the action concerns property she claims as her separate property, and she can be sued in regard thereto, no matter when she acquired it, her husband being joined with her as defendant. Code, secs. 178, 424 (4). It cannot be allowed that when an insolvent husband (or his firm, as *Page 367 
here charged) makes over his property to his wife in fraud of his creditors, she cannot be sued for the recovery thereof because she is a married woman. If in such case the specific property (money, for instance) has been invested in some other shape the fund may be followed. Edwards v.Culberson, 111 N.C. 344, and cases there cited."
It is not necessary to show an actual intent to defraud. The transaction is void per se. Revisal, sec. 962; McCanless v. Flinchum, 89 N.C. 373. Nor does her coverture protect the feme defendant. Bell v. McJones,151 N.C. 85; 2 Pom. Eq. Jur. (3 Ed.), sec. 945. The facts of our case are substantially like those in Trefethen v. Lynam, 90 Me. 376
(60 Am. St., 271), and with reference to the transaction in that case, by which the wife's property was improved, the Court said: "The wife cannot rightfully retain, as against her husband's creditors, the value of permanent additions voluntarily made by him to her property. Outside of the statute exemptions he cannot acquire any property which shall be free from the claims of prior creditors; nor can she acquire such property out of his principal or income. Whenever it appears that she has thus absorbed his money or estate, she can be compelled to account for it by this equitable trustee process. The prior creditor of the husband need not show an actual fraudulent intent on the part of either husband or wife. It is enough for him to show that the wife has acquired some property or value out of her husband's unexempted principal or income. This value thus obtained should be restored by her for the payment of his prior debts, though the husband or (467) his representatives might have no legal or equitable claim to such restoration. The wife may owe a duty of restoration to her husband's prior creditors without owing any such duty to him. Under the principles above stated, however, the husband's right is not the test of his prior creditor's right. As to them, neither husband nor wife can erect buildings on her land with his money and retain the benefit. In the absence of fraudulent intent or active participation upon the part of the wife, it might not be equitable to require her to account for the full sum thus subtracted from her husband's means and appropriated to her property, since the benefit to her estate might not be so much; but she should not retain any benefit or increment in value of his estate made at the expense of her husband's prior creditors. To turn over to those creditors the benefit or increment, if any, thus obtained would cause her no loss of her own property, but would simply transmit some part of the husband's property to his creditors — a most equitable proceeding." It is there said by the Court that the principle so stated is fairly deducible from the cases.
Our attention has been called to Thurber v. LaRoque, 105 N.C. 301, in which it is held that money of an insolvent husband invested in land, *Page 368 
as a gift to his wife, and which is conveyed to her, may be followed by creditors and the land subjected to its payment, but money, when thus invested in improvements on her land, cannot be followed by them, and the latter decision seems to rest upon the idea that the right of the husband's creditors to follow the fund arises out of her implied promise or contract to pay for the improvements. We do not concur in this view. The two cases are affected by the same principle, which has nothing to do with the law of contracts. The creditor's right is an equitable one, and the money so invested, whether in land or improvements, is regarded as "a personal fund fraudulently withdrawn from the husband's creditors," as said by Justice Shepherd in his dissenting opinion, which fully and clearly states the true doctrine. The court proceeds to subject the property, which has derived a benefit from the improvement, not upon the theory that the wife has contracted, either expressly (468) or impliedly, to pay for the improvements, but it follows the fund taken from the husband's estate and which justly belonged to the creditors, into her hands and holds the property as security for its repayment, even against her consent. Any other ruling would be entirely opposed to the true principle upon which this equity of the creditors is based, as will appear in the numerous decisions of this Court, some of which we have cited. If a husband is permitted thus to dispose of his estate and without any accountability on the part of the wife to them, it would enable him to commit the most gigantic frauds in defiance of his creditors. The law cannot be supposed to have contemplated any such result in its attempts to protect the wife against the consequences of her improvident contracts. The general doctrine is nowhere better stated than in Perry on Trusts (5 Ed.), sec. 170: "Although courts of equity have not made general definitions stating what is fraud and what is not, they have not hesitated to lay down broad and comprehensive principles of remedial justice, and to apply these principles in favor of innocent parties suffering from the fraud of others. These principles, though firm and inflexible, are yet so plastic that they can be applied to every case of fraud as it occurs, however new it may be in its circumstances. The leading principle of this remedial justice is by way of equitable construction to convert the fraudulent holder of property into a trustee, and to preserve the property itself as a fund for the purpose of recompense. In investigating allegations of fraud, courts of equity disregard mere technicalities and artificial rules, and look only at the general characteristics of the case, and go at once to its essential morality and merit. Thus, at law married women or infants are not liable upon their contracts. But in equity, if a married woman has obtained property by fraud, the court disregards the technical rules of *Page 369 
common law in regard to married women, and converts her by construction into a trustee, and compels her to do justice by executing the trust."
We need not agree to all that is said in the passage just quoted for the purpose of disposing of this case, as there is no element of contract in the equity which we are now enforcing.
The case is remanded, with direction to reform the pleadings (470) in accordance with the principles declared in this opinion. Issues should be submitted for the purpose of ascertaining the amount invested by the husband for his wife in the improvement, less the personal property exemption therein, and also the amount by which the property has been enhanced in value by reason of the improvement, with such other issues as may be necessary.
New trial.