### MILKMAN v. ARTHE et al.

(District Court, E. D. New York. December, 1914.)

BANKRUPTCY ☞172—ADMINISTRATION OF ESTATE—OWNERSHIP OF PROPERTY— SAVINGS BY WIFE.

A trustee in bankruptcy may recover from the wife of the bankrupt property purchased by her for money saved by her out of that which her husband gave her for the maintenance of the household, where the circumstances were not such as to show a gift by the husband to the wife, or where the husband was actually insolvent at the time, so that he could not make a valid gift to her.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. ☞172.]

In Equity. Suit by Walter Milkman, as trustee of John C. Arthe, bankrupt, against John C. Arthe and others, to recover certain corporate stock claimed to be the property of the bankrupt. Decree directed for plaintiff.

See, also, 213 Fed. 642.

Harry E. Lewis, of Brooklyn, N. Y. (David Steckler, of New York City, of counsel), for plaintiff.

Robert A. Inch, of New York City, for defendants Lucy K. Arthe and Harry Lancaster.

Augustus H. Skillin, of New York City (Marshall S. Hagar, of New York City, of counsel), for defendant, John C. Arthe.

CHATFIELD, District Judge. The trustee in bankruptcy seeks to recover by this bill in equity 45 shares of stock in the Arthe, Levy & Bernhard Company, a New York corporation. The par value of this stock was $100, and it was purchased in the month of June, 1909, in the name of Harry Lancaster, a brother of Mrs. Arthe, with money furnished by her for that purpose.

The trustee alleges that this money was in reality property of the bankrupt estate, which Mrs. Arthe, and all the persons concerned, knew had been accumulated from the bankrupt's property and for him in such a way that his creditors were entitled to receive it. Mr. Arthe was part owner of a company already in bankruptcy at the time of this purchase, and the trustee seeks to show that he had been

insolvent throughout the period during which the fund referred to had been accumulated, and that it had in reality been deposited by him in the hands of his wife, with the knowledge of both him and his wife that he was putting away money that should go to his creditors and that he had creditors who were entitled thereto.

Mrs. Arthe contends that the money consisted in part of gifts, of sums saved by her with her husband's knowledge, at a time when his financial condition made it possible for him to make such donation to her, and that the balance of the fund was actual earnings by her, in the nature of savings in necessary household expenses, for work performed by herself in the place of hired service. It may be said at the outset that Mrs. Arthe, throughout her testimony and in the entire transaction, has given every intimation of a thrifty, intelligent, energetic, honest, and truth-telling woman. Throughout the years since her marriage with the bankrupt, she has done her own housework and performed much of the work around the house for which a man might, without criticism from the creditors, have been employed and paid from Mr. Arthe's earnings.

The testimony indicates that throughout those years, in which the children of Mr. and Mrs. Arthe have grown substantially to maturity, Mr. Arthe has been working as a traveling salesman, or is one of the owners, with substantially a regular drawing account, in the business of selling or manufacturing and selling umbrellas. When on the road his expenses have been paid as a part of his compensation, and a certain amount per week, averaging up to the time of bankruptcy as much as $65 or $70 a week, was turned over to Mrs. Arthe directly from the office of the business. Out of this Mrs. Arthe has saved a certain amount each week. and from these savings she purchased the house in which the family live. Part of the mortgage upon the house she paid off and then replaced the sum at the time of obtaining the stock with reference to which this action is brought. At one time she loaned one of the men connected with Mr. Arthe in business the sum of $1,000, and this was repaid and also went toward buying the stock under consideration. Arthe agreed to procure this loan, and made arrangements with his wife to advance the money without consultation with her; but the borrower testifies that he knew the money came from her and upon her husband's request. A policy of insurance, payable in case of death to Mrs. Arthe, was also made the basis of a loan which went into her hands.

The principal indebtedness of the bankrupt arose from his indorsement of certain notes given by the Kiel & Arthe Company as a part of the purchase price of the Cedar Cliff Umbrella Company. Kiel and Arthe were employés of the Cedar Cliff Umbrella Company and organized the Kiel & Arthe Company. After the bankruptcy of the Kiel & Arthe Company its good will and stock were purchased from the trustee in bankruptcy by a corporation, the Kiel, Arthe & Bernard Company, formed by four individuals, of whom Mrs. Arthe was one. As was planned, Mr. Arthe continued as an employé of the new corporation. All matters connected with the business have been performed by him on behalf of his wife. The Cedar Cliff Umbrella Company was taken over in 1904, and notes given at that time to take up

a debt owing to the estate of one Rubsamen, who was a large owner in the Cedar Cliff Silk Co.

The two principal creditors of the present bankrupt are the men who conducted the Cedar Cliff Umbrella Company and who had borrowed the money for which it was indebted. These men now hold against Arthe the notes which, as was said above, were given to meet that indebtedness as a part of the purchase price by the Kiel & Arthe Company. These two creditors have at all times known of the various relations of the persons concerned, but have themselves not been employed with the firm since Arthe and the other employés purchased it for themselves. The burden assumed by Arthe and his associates made a total of liabilities which from the outset was so great that insolvency might have been expected, unless great success and increase of profits followed the change in the management. At all times since that purchase, a substantially insolvent condition existed, unless extension of time for payment of the business was obtained. Under these circumstances, Arthe and his wife, while living economically and with great credit to Mrs. Arthe for the manner in which she managed her household and brought up her children, nevertheless diverted all the property which Mr. Arthe was able to accumulate from the business into a fund in Mrs. Arthe's hands.

We have, therefore, the general question whether a wife can pay herself for her personal labor from moneys furnished by the husband for household expenses, and retain that money from the husband's creditors, if the husband was insolvent throughout the period; and, second, what the effect would be if he was solvent throughout substantially the greater part or all of the time when the saving was actually made. The trustee has cited In re Sturman (Southern District of New York, December 10, 1913, no written opinion), Aaronson v. McCauley (City Ct. N. Y.) 19 N. Y. Supp. 690, Fretz v. Roth, 68 N. J. Eq. 516, 59 Atl. 676, and Trefethen v. Lyman, 90 Me. 376, 38 Atl. 335, 38 L. R. A. 190, 60 Am. St. Rep. 271, all of which hold that the savings by a wife from the business earnings of her husband are but a sharing by her in the joint property of them both, and that her title is that of her husband, with the result that creditors can reach this fund, unless an out and out gift under proper circumstances, while the husband was solvent, can be shown.

It will thus be seen that the questions propounded must be answered in favor of the trustee, unless the saving by the wife is substantially equivalent to an employment or a gift by the husband, when his financial condition is such that he can make such gift or contract in the nature of a voluntary transfer for the work done. In this respect the facts in the present case seem to show that Mrs. Arthe, with her husband's privilege and consent, was given, or received as payment, for her share in taking care of the home, the surplus which Mr. Arthe saved from his business, and which might have been kept by himself to meet his probable business obligations.

We must therefore proceed to the next question; that is, whether Mr. Arthe made the voluntary gift or contribution to his wife at a time when he was in a financial condition so to do. Here great difficulty arises, from the fact that much of the earnings from which the house

was purchased and the fund accumulated antedated the entering upon the obligations by Arthe during the purchase of the original business. The use of these savings in buying the house is inextricably united with the amount of saving possible therewith. But from the time when Arthe assumed so much obligation in undertaking the purchase of the business that success even greater than was to be expected was necessary to be sure of meeting these obligations, and certainly after September, 1904, the liability for the payment of these notes was known, the condition of Arthe's business was such that he should not be allowed to save money, either through his own acts or by acquiescing in the saving by his wife, with the surplus over moneys needed for the household expenses taken from that portion of the proceeds of the business which should go to pay his debts. Even a change in the standard or method of living might be necessary, but a man has not the right to avoid making that change, or to avoid reduction of the amount of his savings, by claiming the necessity of living as before, and of giving his wife a sufficient sum to accumulate a bank account, even in payment of her share of the work of the home, and thus to avoid payment of his debts.

The plaintiff may have an interlocutory decree, with an accounting for the amount reserved since September, 1904.