DANIEL HEALEY, Executor of the Estate of ELLEN ADAMS, deceased, Appellant, v. BERNARD TILLBERRY, et al., Respondents.

Kansas City Court of Appeals, January 17, 1916.

1. **EQUITY: Subjecting Wife's Land to Debt of Insolvent Husband: Courtesy.** A wife's creditor sought to subject her land to her husband's debt on the ground that, while he was insol-

Healey v. Tillberry.

vent, he had used his money to make permanent and valuable improvements upon her land. The land was subject to a deed of trust given for the wife's debt and which the husband had signed. The husband used his money in finishing a business house on the wife's lot after her death. *Held* that as the husband had a courtesy in his deceased wife's land, he had a right to use his money to protect his courtesy from foreclosure of the deed of trust, and the use thereof was not fraudulent.

2. ———: ———. Where an insolvent husband uses his own funds to improve his wife's land, the value of such improvements may be reached by appropriate chancery proceedings on the part of his creditors who are defrauded thereby.

3. ———: ———: ———. Where a widower releases or gives away his courtesy estate, which has become complete by the death of his wife, to his children or to her devisees, he being insolvent, such relief or gift being in fraud of creditors, can be set aside and his courtesy interest subjected to the payment of such creditors.

4. ———: ———: ———. An insolvent husband has no right, as against his creditors, to give away the income arising from his courtesy in his wife's real estate in paying therewith the general debts of his wife's estate. But where the creditor could have secured a judgment against the husband and levied an execution at any time upon the husband's courtesy and collected the debt, but failed to do so, and waited for several years until the husband was dead and the evidence concerning the transaction had grown dim and uncertain, then in such case relief will be denied the creditor on the ground that the creditor had an adequate remedy at law, and in fulfillment of the maxim that equity aids the diligent and not those who slumber upon their rights.

5. ———: ———: Insolvency. In a case where a creditor of an insolvent husband seeks to subject the debtor's wife's land to the payment of the husband's debt on the ground that the latter has used his own funds to make permanent improvements on his wife's land, the creditors must show that the husband was insolvent at the time such funds were used. Proof that the husband was insolvent at the time of his death, several years later, is not sufficient.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain.* Judge.

AFFIRMED.

*Montgomery & Montgomery* for appellant.

*C. C. Kelly* for respondents.

TRIMBLE, J.—This is a suit in equity by the executor of Ellen Adams, deceased, to subject certain real estate lately owned by Eliza Tillberry, deceased, to the payment of a debt of her husband, A. J. Tillberry, on the ground that the latter expended the money he had borrowed from Mrs. Adams in making valuable improvements upon his wife's said real estate, and after, the death of his wife, permitted the income of said real estate, to which he was entitled as tenant by the courtesy, to be applied toward the payment of his wife's debts and expenses of administration, all in fraud of his creditor, Mrs. Adams. The defendants are now the owners of said real estate, Mrs. Tillberry having given it to them by will, they being children of A. J. and Eliza Tillberry.

It seems that for many years prior to 1904, Mrs. Tillberry was the owner of an unimproved lot on one of the business corners in Sedalia. Desiring to erect a business house thereon, she and her husband about September 1, 1904, executed a deed of trust thereon to the Sedalia Trust Company for $6000 to be used in the construction of said building. On the 17th of October, 1904, the Tillberrys made a written contract with the Trust Company which recited the loan for the purpose aforesaid, and provided that the rent of the lower floor of said building should be collected by the Trust Company and applied on the debt until it and the interest were fully paid.

Shortly after this contract was entered into, and long before the building was completed, Mrs. Tillberry died leaving her husband, A. J. Tillberry, and several children, among them the defendants herein, to whom, as above stated, she devised the business lot in question. Her death occurred November 20, 1904.

At some time during the process of erection, not definitely shown when, but which plaintiff estimates to be about October 24, 1904, A. J. Tillberry borrowed $1000 of Mrs. Adams giving her his unsecured note therefor. There are circumstances, however, which tend to show that it was later than this, as plaintiff says the building was far enough toward completion to have the window frames in at the time the money was obtained, and other testimony for plaintiff shows that the erection of the building dragged along through the winter and was not finished until late in the spring of 1905. At any rate, at some time during the progress of the work on the building, it was discovered that $6000 was not going to pay for the completion thereof, and A. J. Tillberry applied to the Sedalia Trust Company for an additional loan but was refused. Tillberry, in distress lest the deed of trust on the unfinished building be foreclosed, applied for help to the plaintiff, who was the resident catholic priest, and Father Healey, knowing that Mrs. Adams had the money to lend, told him of it and aided him in getting it, acting merely as a friend to both of them.

It is plaintiff's contention that Tillberry used $890 of the money obtained from Mrs. Adams in finishing the building so as to become a rent producing property instead of being foreclosed by the Trust Company; that said Tillberry was insolvent and that, being insolvent, his act in using his own money in improving his wife's land was in fraud of his creditor, Mrs. Adams, and she, or her estate in case of her death, can maintain a suit in equity to subject the wife's real estate thus improved to the payment of said debt to the extent of such additional improvement.

It is further claimed by plaintiff that upon the death of Mrs. Tillberry, her husband, acting as her executor, collected over $2200 in rents from the upper floor of said building and expended it in paying the

debts of said estate and expenses of administration. The rents from the upper floor were to go to the owner of the building, only those from the lower floor being assigned to the Trust Company by the contract of October 17th, and which lower floor rents finally paid off said $6000 deed of trust. Inasmuch as A. J. Tillberry had an estate by the courtesy in said lot which became complete upon the death of his wife, these rents from the upper floor were in fact his and were not subject to the payment of his wife's general debts. [Meyers v. Hansbrough, 202 Mo. 495.] Plaintiff, therefore, claims that Mr. Tillberry's use of these rents in paying the debts against his wife's estate was merely a gift to her estate inuring to the benefit of the devisees of said lot, and that Tillberry, being insolvent, this entitled plaintiff as Mrs. Adams' representative to maintain this suit in equity.

We are not disposed to question the principle of equity invoked by plaintiff, namely, that where an insolvent husband uses his own funds to improve his wife's lands, the value of such improvements may be reached by appropriate chancery proceedings on the part of his creditors who are defrauded thereby. [Kirby v. Bruns, 45 Mo. 234; Lynde v. McGregor, 13 Allen (Mass.) 182; Peoples National Bank v. Loeffert, 184 Pa. St. 164; Frefethem v. Lyman, 38 Atl. 335; Ware v. Hamilton Brown Shoe Co., 9 Southern 136; Vandervort v. Fouse, 52 W. Va. 214.] Nor do we doubt the proposition that where a husband, or rather a widower, releases or gives away his courtesy estate, which has become complete by the death of his wife, to his children or to her devisees, he being insolvent, such relief or gift being in fraud of creditors can be set aside and his courtesy interest subjected to the payment of such creditors. [20 Cyc. 375; O'Harra v. Stone, 48 Ind. 417; Roach v. White, 94 Ind. 510.]

But plaintiff's difficulties are not overcome when the general equitable principles invoked. by him are granted or admitted. The problem of proving facts sufficient to bring plaintiff's case within the above principles still remains, and even after that is done, plaintiff's right to prevail may be affected by another maxim of equity in regard to diligence.

In order to understand these matters it may be well to here state other facts in the case bearing upon the points hereinafter discussed.

On the 5th of February, 1905, A. J. Tillberry was appointed executor of his wife's estate. As related above, she died November 20, 1904. Tillberry made regular annual settlements with the probate court, showing the rents he collected from said building and his disbursements thereof for the estate. These settlements began at the February term, 1906, and continued up to and including the February term, 1910. He made his final settlement in August, 1910. They show that during these years he collected from the rents of said second floor over $2200, more than twice enough to pay Mrs. Adams' note. Mrs. Tillberry, at the time of her death, owned other real estate and her residence was upon one of these other pieces. Their children were all grown. The business lot in question here was not their homestead. So that, at any time after the accrual of Mrs. Adam's note, his courtesy in the business lot was subject to execution for his debt. Shortly after the giving of the $1000 note, Mrs. Adams becoming uneasy about her loan to Tillberry had him to give a new note dated March 20, 1905, which he secured by a deed of trust on certain property which he owned, and the old note was destroyed. Tillberry failing to pay the new note, the deed of trust securing it was foreclosed, the property bringing only $350, which sum, less costs of sale, was credited on the note. On December 29, 1910, suit was brought on the note for the balance due thereon and

on February 7, 1911, a personal judgment against A. J. Tillberry was obtained. If the old note was dated in October, 1904, it would have fallen due in 1906. The new note was made to fall due in March, 1907. A. J. Tillberry died March 5, 1911. Thus during a period of at least four years and possibly five, Tillberry's courtesy in the business lot in question was subject to an execution on a judgment for Mrs. Adams' debt, had one been obtained. This suit in equity was not filed until March 5, 1912, and was not tried until October 27, 1914. And after the accrual of the new note in March, 1907, the rents from the upper story, collected by Tillberry and used by him in paying the debts of his wife's estate, amounted to fully $1500.

The contention of plaintiff that the $1000 was borrowed of Mrs. Adams for the purpose of being used, and that $890 of it was used, in the completion of the building, rests upon declarations alleged to have been made by A. J. Tillberry to the president of the Trust Company and to Father Healey.

Defendants insist that these declarations of A. J. Tillberry are not admissible. Plaintiff says they are admissible for two reasons. First, because Tillberry was his wife's agent, or, if the loan was made after his wife's death, he was the agent of the devisees to finish the building. Second, that the declarations were admissible as having been made against interest by a deceased person, a stranger to the controversy, who was in a position to know of the matters concerning which he spoke.

It may be observed that the evidence does not show clearly when these admissions were made. Perhaps some of them, to the effect that he was going to or had gotten money from Mrs. Adams, were made during the progress of the work on the building, but evidently the declarations that he had used $890 of it in the completion thereof was after his work as

agent in attending to the construction thereof had ceased, if he was such agent superintending the construction thereof. It would seem, therefore, that the declarations as to his having used the money on the building, made after the termination of his agency, could not be admitted on the ground of agency.

But we shall not go into the question of the admissibility of these declarations on either of the above-claimed grounds for reasons here set forth.

Regardless of when the money was borrowed from Mrs. Adams, the evidence unquestionably discloses that it was not *used* on the building until after the wife's death. At that time, A. J. Tillberry had a complete and fully vested estate by the courtesy in the lot. It was his property as much as any other property owned by him. While it was not subject to his wife's general debts it was subject to the Trust Company's deed of trust given by the wife and signed by the husband before the creation of Mrs. Adams' debt. Hence, this courtesy interest was likely to be foreclosed by the Trust Company and lost to him forever. He therefore, had a right to use his money to save that interest from being sold, and the use of the money in finishing the building was not fraudulent as to Mrs. Adams.

But, of course, after he had protected and saved his courtesy interest from foreclosure, he had no right, if he was then insolvent, to give away the proceeds or income arising therefrom to the devisees of said property by paying the general debts of his wife's estate and the costs of administration. But these gifts of the rents could have been stopped at any time after the accrual of Mrs. Adams' debt, since his courtesy was subject to an execution therefor. So that the only act of A. J. Tillberry which Mrs. Adams could not have prevented was his use of the money to preserve his courtesy estate, which act he had a right to do and it was, therefore, not fraudulent. The other act, that

of afterwards paying the debts of his wife's estate, was preventable by Mrs. Adams by the institution of a suit at law. Instead of doing this, however, she allows several years to pass and these gifts to continue year after year during which time her debt could have been easily collected. And this is true regardless of whether Tillberry used his money in completing the building or not, since his courtesy was there and subject to execution. One of the maxims of equity is that it aids the diligent not those who slumber upon their rights. If Mrs. Adams had acted promptly in the collection of her debt it could have been easily collected, but instead of doing this, she allows several years to pass and then, after the evidence of the various transactions has been lost and the parties thereto have died, a suit in equity is brought based upon declarations of a deceased person and upon the evidence of persons whose recollections on many points have become cloudy and uncertain through the lapse of time.

In addition to the foregoing, it may be remarked that there is no evidence that A. J. Tillberry was insolvent at the time he used the money to complete the building. The use of the money in that way did not render him insolvent since it preserved to him a courtesy which of itself was sufficient to pay more than twice the plaintiff's debt to say nothing of the real estate which the petition says Tillberry owned and which the evidence shows he did own. But, as we have seen, his use of the money to finish the building was not voluntary in the legal sense since it was necessary for him to use it in that way to preserve his courtesy, and hence his application of the money to the completion of said building was not fraudulent nor did it render him insolvent.

As to his alleged insolvency at the time he began to apply the rents of the upper floor to pay the debts of his wife's estate, the only evidence on the question

is that, when he died in 1911, he was insolvent, unless insolvency can be inferred from the fact that he allowed the lot he had given as security to be foreclosed. The evidence is that he owned several pieces of real estate aside from his courtesy in the business lot in question, but just what they were worth does not appear. However, the application of the rents as he received them on the debts of his wife's estate did not take his courtesy from him and the value of that courtesy was sufficient to pay the debt, had Mrs. Adams seized it, leaving out of consideration entirely any other property that he himself owned. The record is silent as to his owing any other debts except the one to Mrs. Adams. But even if it be granted that the giving away of the yearly rents reduced his ability to pay Mrs. Adams, still, as she had an adequate remedy at law whereby she could have stopped those payments and could have collected from the rents alone more than enough to pay her debt, we do not think that she or her estate should now be allowed to come into equity and subject defendants' real estate to the payment of her debt.

For these reasons we are of the opinion that the judgment of the chancellor in finding for defendants and dismissing plaintiff's bill should be affirmed. It is so ordered. All concur.