NEW AMSTERDAM CASUALTY COM-
PANY, Appellee and Cross-
Appellant,

v.

Gladys N. WALLER, Appellant and
Cross-Appellee.

No. 8480.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1962.

Decided April 6, 1962.

Willis Smith, Jr., and C. K. Brown, Jr., Raleigh, N. C. (Smith, Leach, Anderson & Dorsett, Raleigh, N. C., on brief), for appellee and cross-appellant.

Charles B. Nye, Durham, N. C., for appellant and cross-appellee.

Before SOPER, HAYNSWORTH and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

In this action by a creditor to reach real estate improved by expenditures of the debtor's money but held in the name of the debtor's wife, the District Court held, in the absence of an affirmative intention to defraud the creditor, the action was not controlled by the North Carolina 3-year statute of limitations applicable to actions founded upon fraud.[1] Since expenditure of the debtor's funds to improve the wife's property was fraudulent in law, whether the parties consciously realized the fraudulent nature of their acts, we think the 3-year statute should have been applied.

C. P. Waller, of Durham, North Carolina, had been engaged in the construction business for many years. In the more recent years, he had been employed by Nello L. Teer Company, of Durham, North Carolina. Earlier, however, he had been an officer and stockholder of the Parkersburg Construction Company, in connection with which, as one of the principals, he personally signed a performance bond. The New Amsterdam Casualty Company, the plaintiff here, was the surety upon that bond. Because of this bond, New Amsterdam was required to complete the construction work which Parkersburg Construction Company had agreed to do for the State of West Vir-

ginia. Subsequently, New Amsterdam brought an action against Waller for the amount of its loss and obtained a judgment against him in the Wake County, North Carolina, Superior Court for the principal sum of $26,368.33. This judgment was entered on June 28, 1951.[2]

In July 1950, while New Amsterdam's action against Waller was pending in the state court, Gladys N. Waller, his wife, acquired title to a vacant lot in a residential section of Durham, North Carolina. There is testimony, and the District Court found, that she paid for the lot with funds given her by a daughter. In 1953, a house was constructed upon this lot at a cost of approximately $34,-000. A fund of $12,000, accumulated out of the debtor's salary checks, was expended to pay for the construction work. The balance of the construction cost was obtained through a mortgage loan granted upon the application of the debtor. The note representing the mortgage debt and the deed of trust, which secured it, were signed jointly by the debtor and by his wife, the defendant here. The wife alone signed the settlement statement.

Subsequent monthly payments to the building and loan association, with exceptions to be noted later, were made by checks drawn by the wife upon a bank account into which the debtor's salary checks were regularly deposited.

The details of the Wallers' finances and the handling of their funds were carefully considered by the District Judge and discussed at length in his findings of fact and in his opinion.[3] We need refer to them only summarily here.

Apparently, because the debtor's construction work required him to be frequently away from home, his wife for many years had charge of family finances. At his request, his employer mailed each salary check earned by him to the wife in

1. New Amsterdam Casualty Company v. Waller, D.C.M.D.N.C., 196 F.Supp. 780.

2. An earlier dismissal of the action had been reversed by the Supreme Court of North Carolina, New Amsterdam Casualty Co. v. Waller, 233 N.C. 536, 64 S.E.2d

826. The judgment against Waller was entered on June 28, 1951, pursuant to the terms of remand, the statute of limitations having been the only defense offered by Waller.

3. 196 F.Supp. 780.

Durham. These checks she deposited in a bank account in her own name against which she drew checks to meet the living expenses of the family. During most of 1951 and 1952, however, the debtor was engaged in construction work in North Africa, and Mrs. Waller was with him there. During this period, the husband's salary checks were mailed by his employer to an attorney, W. P. Farthing, in Durham, who had represented the husband in the action brought against him by New Amsterdam in the state court. Proceeds of these checks were accumulated, at least in part, by Mr. Farthing, and the accumulations in his hands exceeded $12,000 when the Wallers returned from North Africa. This was the source of the $12,000, which, with the proceeds of the mortgage loan, the Wallers used to pay for the construction of the house.

At that time, Mrs. Waller knew of the judgment in favor of New Amsterdam against her husband. Indeed, she knew of the claim and the pendency of New Amsterdam's action when she acquired title to the lot in 1950. It is agreed that the husband was insolvent at all critical times, and husband and wife, of course, knew that they were financing improvements on the wife's lot with funds of the husband.[4]

This action against the wife to reach her property, or so much of its value as represented an investment of the husband's funds, was not commenced until December 28, 1959. More than three years earlier, on August 27, 1956, there had been an adverse examination of the judgment debtor by attorneys for New Amsterdam, during which information was obtained which the District Court assumed [5] would constitute notice to New Amsterdam of the use of the husband's funds to improve the wife's real estate.

Actions founded upon fraud or mistake must be commenced in North Carolina within three years of the accrual of the cause of action. The cause of action does not accrue until the aggrieved party has notice of the facts constituting the fraud or mistake.[6]

The creditor seeks to avoid the 3-year statute of limitations by a disavowal of any claim of actual fraud. It claims no dependence upon North Carolina's stat-

---

4. They said that the husband caused each of his salary checks to be delivered to her, or to Mr. Farthing for her account, with the intention of making an absolute gift to her of so much of the proceeds as she could save after their ordinary living expenses, his as well as hers. The accumulated fund, they said, was hers not his. The District Court made no finding to that effect. It was not required to do so in view of the likelihood that convenience, arising from his frequent and extended absences from their home, required that she have initial management of the family purse. They had no other income than his salary which, in some years, was as much as $15,000. They had no other property than their residence erected upon her lot. He must have been dependent upon her savings, after ordinary living expenses for extraordinary obligations, even ordinary ones such as his income taxes, those due the state even though his employer's withholding may have sufficed to cover his federal obligations. His actual control of accumulations of his earnings is strongly indicated by such things as the fact that he, alone, applied to borrow the $22,000 to enable them to pay in full the cost of construction of the $34,000 house, and his deduction on his income tax returns of the interest increment of their payments to the building and loan association. They may have acted, of course, without conscious realization of the fraudulent nature of their conduct and without deliberate intention of hindrance of his creditor. The District Court found there was no such realization, no such intention. We accept that finding, for it was permissible.

   Whatever their appreciation of the nature and purpose of their acts, the fact is that the insolvent debtor's funds were employed to improve his wife's real estate. The District Court treated the funds as his, not hers, a finding which, if not compelled, was, certainly, acceptably permissible.

5. Whether or not this assumption is correct would be open for consideration by the District Judge upon remand.

6. General Statutes of North Carolina, § 1-52(9).

utes relating to fraudulent conveyances.[7] It contends that North Carolina recognizes a cause of action to reach the property in the hands of the wife, without reference to the statutes on fraudulent conveyances and though the transaction was not fraudulent in fact. It says it seeks to impress the property with a constructive trust in its favor, and that the limitations period for the institution of such an action is ten years.

The launching pad of these contentions is the decision of the Supreme Court of North Carolina in Michael v. Moore.[8] There it appeared that an insolvent debtor borrowed $2,000 secured by a mortgage on land he owned. With the proceeds of the loan, he built a house on his wife's land. In an action brought by the creditor to reach the improvements on the wife's land, a jury found that the debtor had not acted for the purpose of defeating or delaying his creditor. The North Carolina Supreme Court upheld the right of the creditor to follow the funds belonging to the debtor into the wife's property. Because of the finding of the jury, the Court held it was unnecessary to show that the debtor acted with any actual intention to defraud the creditor; the transaction was void per se by virtue of what is now § 39–17 of the General Statutes of North Carolina. That section provides that the transfer itself is evidence of an intention to defraud the creditor. The North Carolina Court also declared that, whether the debtor's intention was fraudulent or not, the transfer was fraudulent in law and was void as to the creditor.

There was no question of limitations in Michael v. Moore. The holding is only that the transfer was void and fraudulent on its face and the creditor was not required to show that the debtor was consciously motivated by an evil purpose. In so holding, the Court referred to the wife as a constructive trustee for the benefit of the creditor, and said that she could be held to account for the value of

the improvement constructed with her husband's funds by reason of that equitable process. However, the Court did not suggest, certainly it did not hold, that there was an independent cause of action to impress a trust upon the wife's property unrelated to the cause of action created by the statutes proscribing fraudulent conveyances. Indeed, as we have noted, the Court cited one of the statutes relating to fraudulent conveyances as authority for its statement that the transaction was void per se.

A constructive trust is merely a procedural device by which a court of equity may rectify certain wrongs. It is suggestive of a power which a court of equity may exercise in an appropriate case, but it is not a designation of the cause of action which justifies an exercise of the power. Professor Scott put it pithily when he said of a constructive trustee:[9]

"* * * He is not compelled to convey the property because he is a constructive trustee; it is because he can be compelled to convey it that he is a constructive trustee."

We find nothing in any North Carolina decision suggesting that the courts of that state, for purposes of limitations, classify a cause of action by reference to the courts' remedial power to grant redress. There are many decisions of the courts of that state recognizing the courts' power to avoid unjust enrichment by compelling one to convey or disgorge that which in good conscience belongs to another, and in which one burdened with the duty is called a constructive trustee. For purposes of limitations, however, the North Carolina Court has looked to the nature of the right of the litigant which calls for judicial aid, not to the nature of the remedy to rectify the wrong.

In Little v. Bank of Wadesboro, 187 N. C. 1, 121 S.E. 185, the action was one to set aside a deed because of undue in-

---

7. General Statutes of North Carolina, §§ 39–15, 39–17.

8. 157 N.C. 462, 73 S.E. 104.

9. 3 Scott on Trusts 2315, § 462.

fluence. The question was whether the action was barred by the 3-year statute applicable to actions founded upon fraud. It was contended by the plaintiff that he was attempting to impress the property with a trust and the 10-year statute was applicable. As here, he buttressed his contention by reference to decisions that undue influence sufficient to invalidate a deed need not imply moral turpitude or improper motivation. The Supreme Court of North Carolina, after referring to such cases, held that the exercise of such undue influence is fraudulent whether intended to be so or not. This was entirely consistent with Michael v. Moore, where the same court held a fraudulent conveyance to be just that whether or not the grantor appreciated the nature of his act.

The Supreme Court of North Carolina, in Little v. Bank, thereupon held that the 3-year statute applicable to actions founded upon fraud or mistake barred the action, provided the undue influence ended more than three years before the commencement of the action. The 10-year statute, generally applicable to actions to enforce resulting trusts, was held inapplicable. The Court said that the right to impress the trust was dependent upon the right to assail the deed, and the right to assail the deed was founded upon undue influence, a legal fraud.[10]

This Court considered the same question in Reynolds v. Whitin Machine Works, 4 Cir., 167 F.2d 78, 87. There was a claim for relief there because of an alleged breach of confidence involving a trade secret. The defendant contended the action was barred by North Carolina's 3-year statute applicable to actions founded upon fraud, while the plaintiff contended that he was seeking to impress a trust upon the property and that maintenance of the action was governed by the 10-year statute. This Court held that breach of confidence was a species of fraud, and that the action was barred by North Carolina's 3-year statute of limi-

tations. In doing so, the decision of the Supreme Court of North Carolina in Little v. Bank was accepted as declarative of the law of that state.

We also accept it here. It applies generally accepted principle. It does not appear that North Carolina's courts have since departed from it. If Michael v. Moore is read to say an insolvent husband's improvement of his wife's property is fraudulent in law, though he intended no wrong, the present case is not made distinguishable from Little v. Bank, for there, too, the Court recognized that undue influence, fraudulent in law and sufficient to make the deed void, could have been exercised without an affirmative intention of wrong-doing or an evil purpose. In either instance, the conduct is a legal fraud, and an action brought to undo it must be commenced within three years, else it is barred by North Carolina's statute of limitations applicable to actions founded upon fraud.

Constructive trusts most frequently arise because of actual fraud or mistake. Professor Scott reminds us, however,[11] that fraud or mistake is not invariably an essential ingredient. There may be a constructive trust, though there has been no mistake and though the constructive trustee's conduct was not reprehensible. Words of condemnation may become appropriate only when the constructive trustee seeks to avoid his duty to surrender the property by which he is unjustly enriched to the detriment of another.

Fraud or mistake, however, is so commonly the basis of constructive trusts, it is not surprising that a legislature, many years ago when it undertook to classify actions for purposes of limitations, should have referred to this kind of action as one founded upon fraud or mistake. The Supreme Court of North Carolina has held the section applicable to an action to set aside a deed because of undue influence, though recognizing that undue influence may be exercised without

10. See, also, Muse v. Hathaway, 193 N.C. 227, 136 S.E. 633.

11. 3 Scott on Trusts 2312, et seq., § 462.

an evil intention.[12]  We hold it applicable here.  If the Wallers acted without intending to defraud the husband's creditor, as the District Court found,[13] the transfer was a legal fraud and void as to the creditor because of the statute proscribing fraudulent conveyances.  This is the kind of action which logically falls under this classification.

Upon a reading of the limitations statutes of North Carolina, it is readily apparent that the classification is based upon the substantive nature of the cause of action.  The language immediately applicable here is that an action must be brought within three years if "[f]or relief on the ground of fraud or mistake * * *."  There is no suggestion of classification on the basis of remedies which might be available for enforcement of the substantive right.  The right asserted is determinative, not the relief sought.  A declaration that Mrs. Waller is a constructive trustee is an appropriate remedial step, but it is not descriptive of the substantive right, and the fact that the plaintiff seeks it is irrelevant to the question of limitations.[14]

In a number of North Carolina cases there may be found expressions such as, "A resulting or constructive trust, as distinguished from an express trust, is governed by the ten-year statute of limitations."[15]  Such references in a single breath to constructive trusts and resulting trusts are found in opinions dealing with resulting trusts.  It is clear that in North Carolina, the institution of an action to enforce a resulting trust is governed by the 10-year statute.[16]  It is a logical classification.  If Mr. Waller had a beneficial interest in the house, that property interest should remain subject to execution as long as there is life in the plaintiff's judgment.

Constructive and resulting trusts, however, are not of the same species.  Casual and indiscriminate references to one, when speaking of the other, are not persuasive.  Certainly they cannot overturn clear holdings that the period of limitations for actions in which the relief asked is the declaration of a constructive trust is determined by reference to the nature of the substantive right asserted.

Though we hold that the District Court should have applied the 3-year statute of limitations rather than the 10-year statute, we think the plaintiff is entitled to some relief.

The District Court held that the plaintiff had failed to prove with sufficient certainty or clarity the extent to which the husband's funds were employed to meet the payments on the mortgage debt.  In the light of the proven facts, we think he applied a standard too stringent.

The testimony showed that after their return from North Africa, each of the husband's salary checks was deposited to the wife's account in the bank.  Usually the payments on the mortgage were paid by the wife by a check drawn upon that account.  The testimony showed that she had no other funds or means of support

12. Little v. Bank of Wadesboro, 187 N.C. 1, 121 S.E. 185.

13. We would have some difficulty reaching that conclusion on the facts.  The Wallers may have been no more than indifferent to the creditor's rights, but they knew the husband was insolvent and they knew he was employing his money to improve his wife's property.  Whatever their conscious motivation, they are chargeable with the inevitable consequence of their acts.

14. There are a number of cases in North Carolina holding applicable the 3-year statute rather than the ten, where the plaintiff sought a declaration that the defendant, whose conduct was plainly fraudulent, was a constructive trustee.  See, e. g., Tuttle v. Tuttle, 146 N.C. 484, 59 S.E. 1008; Osborne v. Wilkes, 108 N.C. 651, 13 S.E. 285; Ewbank v. Lyman, 170 N.C. 505, 87 S.E. 348; Hooker v. Worthington, 134 N.C. 283, 46 S.E. 726; Rhodes v. Purvis, 197 N.C. 458, 149 S.E. 552.

15. Bowen v. Darden, 241 N.C. 11, 84 S.E. 2d 289.  See, also, Teachey v. Gurley, 214 N.C. 288, 199 S.E. 83; Jarrett v. Green, 230 N.C. 104, 52 S.E.2d 223.

16. Sexton v. Farrington, 185 N.C. 339, 117 S.E. 172; and see the cases cited in fn. 15.

and the record is barren of any evidence that any funds were ever deposited to that account except the earnings of the husband.

The record of the building and loan association shows several instances of overpayments on the mortgage debt. In one instance, $2,000, and, in another instance, $500 were paid anticipatorily. Mrs. Waller testified that each of these sums was a gift to her from one of their children. Additionally, there was very unspecific testimony that their children from time to time made other small gifts, or contributions, to their parents. Two daughters resided with Mr. and Mrs. Waller during all or part of the period, and the Wallers claimed the children made some contributions to household expenses and for furnishings for their rooms, but there is nothing to connect such incidental contributions or payments with curtailment of the mortgage debt. The very general claim that their children gave her money to be used in making payments on the mortgage debt is made specific only by reference to the two anticipatory payments aggregating $2500.

On this evidence, it was within the province of the District Judge to find, if he was persuaded by the testimony of Mr. and Mrs. Waller, that the two anticipatory payments on the mortgage were made with funds received as gifts from children, but the record appears to show plainly that all other payments on the mortgage were derived from the husband's earnings. The record even contains copies of the husband's individual state income tax returns, which show he claimed as a deduction all of the interest increment of the mortgage payments.

When the creditor was able to show that the wife had no other regular means of support than the husband's earnings, the burden of showing some other source of funds shifted to her. As to the two specific items, the testimony may have been sufficient to discharge that burden, but that, together with vague and unspecific references to gifts and contributions by children at other times, was insufficient to so becloud the picture that the creditor should go with no relief.

Since many of the mortgage payments would not be affected by application of the 3-year statute of limitations, we think the case should be remanded to the District Court for further proceedings, including the taking of additional evidence if he should determine that to be desirable.

■ Finally, however, the defendant has advanced an unrelated defense. She claims for her husband North Carolina's constitutional exemption from sale under execution of personal property not exceeding $500 in value.[17] She reasons that since a debtor is said to have the right to deal with exempt property as he chooses, he could give it away without defrauding the creditor. Since each check she received was for an amount less than $500, for the husband's salary was paid weekly, she would apply the exemption successively to each payment. She would have us hold that an insolvent husband may donate to the wife all of his income receipts so long as no one of them exceeds $500, no matter how frequently received or how rich she waxed or the extent of his enjoyment of her riches.

There is no warrant for such a contention. The husband can claim the exemption at the time of levy. If there are successive levies, he can claim it at the time of each levy, but he cannot claim it each time he makes a gift to his wife. As yet, there has been no levy upon any personal property of the Wallers. Until there is, no occasion for application of the constitutional exemption arises.

Reversed and remanded.

---

17. Art. X, § 1 of the North Carolina Constitution.