**NEW AMSTERDAM CASUALTY COMPANY, Plaintiff,**

v.

**Gladys N. WALLER, Defendant.**

**No. C-190-D-59.**

United States District Court
M. D. North Carolina,
Durham Division.

Aug. 17, 1961.

Smith, Leach, Anderson & Dorsett, Raleigh, N. C., and Bryant, Lipton, Strayhorn & Bryant, Durham, N. C., for plaintiff.

Charles B. Nye, Durham, N. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

The plaintiff, New Amsterdam Casualty Company, a New York corporation, seeks by this action to have the defendant, Gladys N. Waller, a resident of Durham County, North Carolina, declared a constructive trustee with respect to certain real property which she owns, to the extent funds belonging to her husband, C. P. Waller, were used to acquire the property. Among other defenses, the defendant pleads the three-year statute of limitation applicable to fraudulent conveyances in bar of plaintiff's right of recovery.

The case was tried by the court without a jury. At the conclusion of the trial, the parties were given a specified time within which to file proposed findings of fact, conclusions of law, and briefs, after which oral arguments would be heard.

The requests for findings of fact, conclusions of law, and briefs of the parties having been received, the court, after considering the pleadings and evidence, including exhibits, answers to interrogatories and stipulations filed, and briefs and oral arguments of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

### Findings of Fact

1. The plaintiff is a corporation organized and existing under the laws of the State of New York, and has its principal place of business outside the State of North Carolina.

2. The defendant is a citizen and resident of Durham County, North Carolina.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

4. In July, 1950, the defendant was conveyed a vacant lot in Durham County, North Carolina, by the Durham Realty and Insurance Company, known as 3201 Surrey Road, Durham, North Carolina, and more fully described in deed record in Book 192, at Page 223, Durham County Registry. The purchase price of the property was $1,500, the entire amount of which was paid by the defendant's daughter, Theda J. Waller, by check dated July 29, 1950, and drawn on the Fidelity Bank of Durham, North Carolina.

5. At the time defendant acquired title to said property in 1950, she knew that plaintiff had instituted a suit in the Superior Court of Wake County, North Carolina, against her husband, C. P. Waller. On June 28, 1951, a judgment was entered in said action in favor of the plaintiff and against the defendant's husband in the amount of $26,868.33, together with interest and costs, which judgment is the basis of this action. The defendant's said husband is hereinafter sometimes referred to as "judgment debtor."

6. In 1953, a house was constructed upon said property located at 3102 Surrey Road, Durham, North Carolina, at a cost of $34,000. The construction cost was paid as follows: $12,000 in cash and the balance from the proceeds of a $22,000 loan obtained from the Home Building and Loan Association of Durham. The application for the loan was signed by the judgment debtor only, and the name of the defendant did not appear thereon.

7. The $22,000 note and deed of trust were jointly signed by the defendant and her husband, but the defendant received in her sole name all the construction money advanced by said association. The defendant also executed in her sole name the settlement statement covering the loan. The judgment debtor was not residing in North Carolina during the actual construction of the home.

8. The judgment debtor has been employed in construction work by the Nello L. Teer Company of Durham, North Carolina, for many years, and his work has carried him out of the State much of the time. Since at least 1943, except for a period in 1951 and 1952 when the defendant and her husband were in North Africa, all of the salary checks of the judgment debtor have been mailed directly by his employer to the defendant at her home in Durham. Most of the salary checks have been endorsed by the defendant and deposited to her personal checking account at the Durham Bank and Trust Company.

9. The defendant and her husband spent most of 1951 and 1952 in North Africa, during which time the defendant's husband was working on a construction job earning a salary of $15,000 per year. During this entire time, the judgment debtor's salary checks were sent by his employer directly to a Mr. Farthing in Durham, North Carolina, who invested the money in bonds under the direction and for the benefit of the defendant.

10. The $12,000 cash payment made on the home constructed in 1953 was paid by the defendant. The source of these funds is the subject of much controversy between the plaintiff and the defendant. The defendant kept house, doing the cooking, laundry, ironing, and other household work, for her husband and a daughter during the two years they were in North Africa, and also furnished room and board and laundry for another lady who was living with them. She was paid various amounts each month by her daughter and the other lady living in the home, both of whom were working. The defendant's husband also contributed to the family finances from his expense allowance. The record is not clear as to the exact amount of money Mr. Farthing was holding for the defendant upon her return from North Africa in September of 1952, but the fund was in excess of $12,000. The defendant does not remember how she paid the $12,000 to the contractor, whether by check or cash, but does remember that she made the payment. She says that the $12,000 came from her husband's salary checks invested by Mr. Farthing under her direction, and from money turned over to her to run the home and take care of her family. The defendant has never inherited any money and has never been paid any salary or wages for work outside the home since she and her husband were married in 1920. Since she had to wait some weeks to join her husband in North Africa due to a lack of funds, it is clear that she had no savings before going to North Africa. She has no idea what funds she saved while in North Africa from money paid by her daughter and the other lady living in her home, and the contributions made by her husband to the family living expenses. However, it is reasonably clear that this was, at most, only a nominal amount. From the entire record, it is found that the plaintiff has established by a preponderance of the evidence that the entire $12,000 paid to the contractor by the defendant at the time the house was constructed in 1953 was paid from funds turned over to her by Mr. Farthing, which funds exclusively represented salary checks of the judgment debtor.

11. The judgment debtor was away in 1950 and did not know about the purchase

of the land upon which the house was later constructed, or the fact that the title had been put in the defendant's name only, until after the transaction had been completed.

12. The defendant made a will in 1957 devising and bequeathing all of her property, both real and personal, unto her children living on the date of her death, absolutely and in fee simple. Her husband was not mentioned in the will.

13. The monthly payments made on the $22,000.00 loan obtained from the Home Building and Loan Association, including principal and interest, are $174. The first monthly payment became due on August 1, 1953, and all sums paid on said note and deed of trust have been paid by the defendant, except one payment in the sum of $2,000 which was paid by defendant's son from his own earnings.

14. Some of the payments made by the defendant to the Home Building and Loan Association on said note and deed of trust have been from earnings of her husband, and some have been from funds given her by her children. The average net weekly salary of defendant's husband from 1955 through 1959 was $167.20, and his net weekly salary since 1959 has been $155.49, all of which weekly salary checks, as earlier noted, have been sent directly to the defendant and deposited by her to her own checking account. In addition to these weekly salary checks, the defendant has received various sums from her children. Both daughters lived in the home until 1956, and one remained through 1957. They both paid the defendant various sums of money from time to time while living in the home. On one occasion in 1954, defendant's son sent her $500, which she used for making payments on the home. The defendant used her husband's salary checks, and the various sums given to her by her children, to operate the home and make the building and loan payments. Considering the entire record, it is found that the plaintiff has failed to establish with any degree of certainty what amount has been paid the building and loan association by the defendant from her husband's earnings and what amount has come from funds contributed by her children.

15. Defendant and her husband have claimed interest payments made to the Home Building and Loan Association as deductions on their joint Federal income tax returns, and the judgment debtor has claimed the interest payments as deductions on his individual state income tax returns.

16. Prior to the institution of this action, an execution was issued to the Sheriff of Durham County on the aforementioned judgment and same was returned unsatisfied for the reason that no property of the judgment debtor could be found in Durham County from which to satisfy same. No part of the judgment has been paid, and at all times pertinent the judgment debtor has been insolvent.

17. The parties stipulated that the judgment debtor has never been in trust or confidential relationship with the plaintiff since 1948.

18. Neither the defendant nor her husband has ever advised the plaintiff that any part of the judgment debtor's salary was being held in any manner for the purpose of satisfying plaintiff's judgment.

19. The plaintiff has never attempted to attach or garnish any part of the salary checks of the judgment debtor.

20. Neither the defendant nor her husband has ever concealed in any manner from the plaintiff the fact that defendant was receiving the judgment debtor's weekly pay checks.

21. The facts alleged in the complaint are based mainly on facts disclosed to the plaintiff when it adversely examined the judgment debtor on August 27, 1956. There was particularly disclosed to the plaintiff on said date all the material facts and circumstances relating to the $12,000 cash payment made by the defendant on her home in 1953. The plaintiff also knew on said date that defendant was receiving her husband's weekly salary checks and that the judgment debtor had no other income.

22. This action was commenced on December 28, 1959.

23. The plaintiff never advised the defendant prior to the institution of this action that it claimed any right, title or interest in or to any of the judgment debtor's salary checks, or the home which stands in the defendant's name. The plaintiff has never demanded any sum of the defendant except through the institution of this action.

24. At the time her home was constructed in 1953, the defendant knew that the plaintiff's judgment had been rendered against her husband and that same was outstanding and unpaid.

25. It has been stipulated and agreed that the plaintiff is not depending upon the provisions of Sections 39–15 and 39–17, General Statutes of North Carolina, statutes relating to fraudulent conveyances, as a basis for its recovery in this action.

### Discussion

The principal question for decision is whether the plaintiff has established the right to subject to the payment of its judgment any part of the funds of the judgment debtor used by the defendant in the construction of her home. The plaintiff contends that the defendant is a constructive trustee for its benefit with respect to such funds. The defendant principally argues that the judgment debtor never gave the defendant any weekly salary checks, or any savings therefrom, which were not exempt from the satisfaction of plaintiff's judgment under the Constitution and laws of the State of North Carolina; that plaintiff has been guilty of laches and unconscionable delay in bringing its action against the defendant; that the evidence does not indicate with any degree of certainty the amount of funds of the judgment debtor used by the defendant in making the down payment on her home and the monthly payments to the building and loan association; and that at most the plaintiff has only shown a fraudulent conveyance with respect to an undetermined

portion of the judgment debtor's funds, and that the action is thus barred by the three-year statute of limitations.

There is no merit to the argument that since the judgment debtor never at any one time received a salary check in excess of his constitutional exemption of $500,[1] and never at any one time gave the defendant an amount in excess of such exemption, no part of the funds given to the defendant by the judgment debtor can now be reached by the plaintiff in this proceeding. It is true that the $500 personal property exemption guaranteed by the Constitution must be allotted from time to time as often as the judgment debtor might be pressed with execution, the policy being to enable him "not only to have the exemptions allotted to him once, but to keep them about him all the time, for the comfort and support of himself and family." (Commissioner of Banks v. Yelverton, 1933, 204 N.C. 441, 168 S.E. 505, 508), but the constitutional exemption has no application to accumulated funds of a judgment debtor, even though accumulated by a series of payments, each less than the $500 constitutional exemption. The correct rule is that a judgment debtor may claim his exemption as against successive executions but may not have exempt funds in his possession at any one time in excess of his exemption. Stated another way, a judgment debtor is privileged to make successive claims for his exemption, but may not hold free from execution at any one time an amount in excess of his exemption. 22 Am.Jur., Exemptions, Section 11 and 35 C.J.S. Exemptions § 69. Since the defendant had in her possession at one time in 1953 accumulated funds of the judgment debtor in excess of $12,000, such funds, even though accumulated in separate payments of less than $500 each, would be subject to only one exemption. None of the cases cited by the defendant are to the contrary.

Neither can the plaintiff be held to be guilty of laches and "uncon-

[1]. Article 10, Section 1, Constitution of North Carolina.

scionable delay" in bringing its action against the defendant. There is no evidence indicating that the plaintiff knew of any basis for bringing its action prior to the time it adversely examined the judgment debtor on August 27, 1956. This action was commenced on December 28, 1959, slightly more than three years thereafter. The defendant has not demonstrated any prejudice by reason of the delay, especially with respect to the $12,-000 used from the judgment debtor's accumulated salary checks to make the down payment on her home in 1953. The defendant argues that if merit is otherwise found in the plaintiff's action, and the action had been brought earlier, she would not have continued the "thriftiness and sacrifices" which were necessary to enable her to construct and make the monthly payments on the home. The answer to this argument is that the defendant has had the use and enjoyment of her home for almost eight years, and that such was partially made possible through the use of funds that were withheld from her husband's creditors.

The next contention advanced by the defendant presents a more serious problem. The defendant earnestly argues that the evidence fails to disclose with any degree of certainty the amount of funds of the judgment debtor used in making the down payment on her home and the monthly payments to the building and loan association. It is pointed out that all the evidence indicates that the $12,000 down payment on defendant's home came from her husband's salary checks invested for her by Mr. Farthing and some money saved while living in North Africa, and that the monthly payments on the home came from the weekly salary checks of her husband and funds given to her by her children. With respect to the $12,000 down payment, the defendant had no idea as to what funds she saved while in North Africa. She could not even state with any degree of certainty that the funds amounted to as much as $200. It is certain that Mr. Farthing had for the defendant upon her return an accumulated fund from her husband's salary checks in excess of $12,-000, and that the defendant made a $12,000 down payment on her home. It is reasonable to assume that any nominal amount the defendant might have saved while in North Africa was used for other purposes, and that the $12,000 down payment came from the accumulated salary checks of her husband. Under these circumstances, if the plaintiff is otherwise entitled to prevail, the rule seems to be "that equity will impress the trust character upon the entire mass and treat it as trust property or funds * * *." Edgecombe National Bank & Trust Co. v. Barrett, 1953, 238 N.C. 579, 78 S.E.2d 730, 736. However, the evidence is less clear with respect to the source of the funds used by the defendant to make the monthly payments to the building and loan association. All the evidence indicates that some of the payments came from earnings of the judgment debtor and that some came from funds given the defendant by her children. It was established that on one occasion the defendant's son made a $2,000 payment to the building and loan association from his own funds, and on another occasion he gave the defendant $500 for use in making building and loan payments. The defendant's daughters gave her various sums of money, certainly through the year 1957. The evidence does not establish with any degree of certainty what portion of the judgment debtor's salary was used to make building and loan payments and what portion was used for the operation and maintenance of the home and for personal expenditures of the defendant and her family. While it is a principle of equity that property impressed with a trust may be followed through all changes in its state and form, it nevertheless must be capable of substantial identification in order to be impressed with a trust. 54 Am.Jur., Trusts, Section 248, et seq. The prevailing rule is stated in Edgecombe National Bank & Trust Co. v. Barrett, 1953, 238 N.C. 579, 78 S.E.2d 730, as follows:

"But it is a cardinal rule of trust pursuit that the proceeds or the

product of the initial property must be traced and identified through any and all intermediate transfers into the property sought to be reached; otherwise the beneficiary has only the rights and remedies of a general creditor to claim damages as for conversion or as for money had and received."

Even though the trust pursuit rule only requires a substantial identification of trust property, the evidence here fails to disclose any basis, percentage or otherwise for ascertaining what portion of the funds of the judgment debtor was used to make the building and loan payments.

■ Having determined that the defendant used $12,000 in funds belonging to the judgment debtor in making the down payment on her home, and that these funds were used while the judgment debtor was insolvent, and while the defendant had knowledge of such insolvency and the existence of the plaintiff's unsatisfied judgment, it is clear that plaintiff can reach these funds if its action was timely brought. In this connection, the defendant contends that if plaintiff has otherwise established any basis for recovery, its action is barred by Section 1–52, General Statutes of North Carolina, which provides that actions for "relief on the ground of fraud or mistake" shall be barred within three years, and that such action shall be deemed to have accrued when the aggrieved party discovers "the facts constituting the fraud or mistake." It is argued that since plaintiff at most has only shown a fraudulent conveyance which is condemned by Sections 39–15 and 39–17, General Statutes of North Carolina, and since it has been established that plaintiff had knowledge of all material facts upon which it now bases its claim, and particularly had knowledge with respect to all facts and circumstances relating to the $12,000 down payment on defendant's home, more than three years prior to the institution of this

action, the plaintiff's claim is clearly barred by the statute of limitations. The plaintiff, on the other hand, contends that its action is to impress the $12,000 with a constructive trust in its favor, and that such an action is governed by the ten-year statute of limitations.

It is conceded that actions to establish constructive trusts, as distinguished from actions to set aside fraudulent conveyances, are governed by the ten-year statute of limitations,[2] and not the three-year statute. Bowen v. Darden, 1954, 241 N.C. 11, 48 S.E.2d 289.

The distinguishing features between fraudulent conveyances and constructive trusts are not easily discernible. No case has been cited or found which makes the distinctions a basis for decision. Both sides cite Michael v. Moore, 1911, 157 N.C. 462, 73 S.E. 104, in support of their position. The plaintiff contends that the court, while not stating the theory of the case in so many words, was actually dealing with a constructive trust. The defendant argues that since the case is annotated under Section 39–15, General Statutes of North Carolina, a statute dealing with fraudulent conveyances, the case was decided under that statute. In any event, the facts in the Michael case are strikingly similar to the facts here presented, and there can be no doubt but that the legal principles there laid down are applicable to the facts in this case. After a judgment had been rendered against the judgment debtor, and while an appeal was pending, the judgment debtor and his wife borrowed $2,000 on property owned by the judgment debtor, and secured same by a lien on the property. The $2,000 so borrowed was used to erect a residence on a lot in the name of the judgment debtor's wife. The wife had notice of the judgment before the execution of the lien to secure the $2,000 loan, and before the funds were used in the erection of the dwelling upon her land. She also knew the judgment debtor was insolvent. The jury for its verdict

2. Section 1–56, General Statutes of North Carolina: *All other actions, ten years.* An action for relief not otherwise limited by this subchapter may not be commenced more than ten years after the cause of action has accrued.

found that the judgment debtor did not obtain the loan and use the proceeds therefrom in the erection of permanent improvements upon the land of his wife "for the purpose of defeating or delaying or defrauding the payment of the plaintiff's judgment against him," and that the wife did not "have knowledge of such purpose on the part of her husband." It was further found that the value of the lot owned by the wife, independent of the improvements placed on it by the money of her husband, was $600, and that the judgment debtor expended the sum of $2,000 in the erection of a dwelling on the land of his wife. Upon these findings, the trial court held that the wife owned her lot, "subject to the equity in the same of her husband, in the sum of $2,000, to be pursued by the plaintiff as he may be advised." The North Carolina Supreme Court (157 N.C. 462, 73 S.E. 104, 105) held:

"We entertain no doubt as to the plaintiff's right to follow the fund invested by his debtor in improvements upon his wife's land. No principle is better settled by our decisions than the one that an insolvent debtor cannot withdraw money from his own estate and give it to another to be invested by him in the purchase or improvement of his property, and, when it is done, creditors may subject the property so purchased or improved to the payment of their claims * * *.

"It is not necessary to show an actual intent to defraud. The transaction is void per se. * * * The facts of our case are substantially like those in Trefethen v. Lynam, 90 Me. 376, 38 Atl. 335, 38 L.R.A. 190, 60 Am.St.Rep. 271, and with reference to the transaction in that case, by which the wife's property was improved, the court said: 'The wife cannot rightfully retain, as against her husband's creditors, the value of permanent additions voluntarily made by him to her property. Outside of the statute exemptions, he cannot acquire any property which shall be free from the claims of prior creditors; nor can she acquire such property out of his principal or income. Whenever it appears that she has thus absorbed his money or estate, she can be compelled to account for it by this equitable trustee process. The prior creditor of the husband need not show an actual fraudulent intent on the part of either husband or wife. It is enough for him to show that the wife has acquired some property or value out of her husband's unexempted principal or income. This value thus obtained should be restored by her for the payment of his prior debts, though the husband or his representatives might have no legal or equitable claim to such restoration. The wife may owe a duty of restoration to her husband's prior creditors without owing any such duty to him. Under the principles above stated, however, the husband's right is not the test of his prior creditors' right. As to them, neither husband nor wife can erect buildings on her land with his money and retain the benefit. In the absence of fraudulent intent or active participation upon the part of the wife, it might not be equitable to require her to account for the full sum thus subtracted from her husband's means and appropriated to her property, since the benefit to her estate might not be so much; but she should not retain any benefit or increment in value of his estate made at the expense of her husband's prior creditors. To turn over to those creditors the benefit or increment, if any, thus obtained, would cause her no loss of her own property, but would simply transmit some part of the husband's property to his creditors—a most equitable proceeding. ' * * * The court proceeds to subject the property, which has derived a benefit from the improvement, not upon the theory that the wife has contracted,

either expressly or impliedly, to pay for the improvements, but it follows the fund taken from the husband's estate, and which justly belonged to the creditors, into her hands and holds the property as security for its repayment, even against her consent. Any other ruling would be entirely opposed to the true principle upon which this equity of the creditors is based, as will appear in the numerous decisions of this court, some of which we have cited. If a husband is permitted thus to dispose of his estate, and without any accountability on the part of the wife to them, it would enable him to commit the most gigantic frauds in defiance of his creditors. The law cannot be supposed to have contemplated any such result in its attempts to protect the wife against the consequences of her improvident contracts. The general doctrine is nowhere better stated than in Perry on Trusts (5th Ed.) § 170: 'Although courts of equity have not made general definitions stating what is fraud and what is not, they have not hesitated to lay down broad and comprehensive principles of remedial justice, and to apply these principles in favor of innocent parties suffering from the fraud of others. These principles, though firm and inflexible, are yet so plastic that they can be applied to every case of fraud as it occurs, however new it may be in its circumstances. The leading principle of this remedial justice is by way of equitable construction to convert the fraudulent holder of property into a trustee, and to preserve the property itself as a fund for the purpose of recompense. In investigating allegations of fraud, courts of equity disregard mere technicalities and artificial rules, and look only at the general characteristics of the case, and go at once to its essential morality and merit. Thus at law married women or infants are liable upon their contracts. But in equity, if a married woman has obtained property by fraud, the court disregards the technical rules of common law in regard to married women, and converts her by construction into a trustee, and compels her to do justice by executing the trust.' * * *."

While the Michael case was remanded for the purpose of reforming the pleadings in certain respects, the quoted legal principles were enunciated notwithstanding the findings that there had been no intent on the part of the judgment debtor to defeat, delay or defraud his judgment creditor, and that his wife had no knowledge of any such fraud. The effect of the decision was to hold that in a situation such as here presented, the wife should be compelled to account for her husband's funds expended in improving her property "by this equitable trustee process," and that there need not be any showing of an actual fraudulent intent on the part of either husband or wife. It is enough to show that "the wife has acquired some property of value out of her husband's unexempted principal or income." Under such circumstances, the court, by way of equitable construction, will convert the holder of the property into a trustee for the benefit of her husband's creditors. The court clearly seems to have been speaking of a constructive trust rather than a fraudulent conveyance.

In Ewbank v. Lyman, 1915, 170 N.C. 505, 87 S.E. 348, an action to set aside a deed on the grounds of fraud, it was held that plaintiff's action was barred by the statute of limitations, whether the ten-year statute or the three-year statute. Under the facts presented in that case, it was held that the three-year statute was applicable. In Osborne v. Wilkes, 1891, 108 N.C. 651, 13 S.E. 285, an action under the fraudulent conveyance statute, it was held that the plaintiff's action was barred three years after the discovery of the fraud, or three years after, by the exercise of reasonable diligence, the fraud might have been discovered. Some of the essential elements necessary to

constitute fraudulent conveyances under the statute are discussed in this case and in the case of Aman v. Waller, 1914, 165 N.C. 224, 81 S.E. 162. In the latter case, the court points out that if a conveyance is voluntary, and the grantor does not retain property fully sufficient and available to pay his debts, the conveyance, under the fraudulent conveyance statutes, is invalid as to creditors. The subject of fraudulent conveyance is exhaustively treated in 24 Am.Jur., Fraudulent Conveyances, Section 1, et seq. There it is stated that a fraudulent conveyance is a "transaction by means of which the owner of real or personal property has sought to place the lands or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights, or a conveyance which operates to the prejudice of the legal or equitable rights of other persons, including subsequent purchasers." 24 Am.Jur., Fraudulent Conveyances, Section 2. It is further stated that the principle underlying the law of fraudulent conveyances is "that the creditor has a claim upon the property of his debtor, constituting a fund from which the debt should be paid, and that the debtor may not ignore the right or equity of his creditors to be paid out of it." 24 Am.Jur., Fraudulent Conveyances, Section 3. While the existence of a fraudulent intent to delay, hinder or defraud creditors is an essential element in actions to set aside fraudulent conveyances, direct evidence of fraud is not essential if the conveyance is made under such circumstances "that the result must necessarily be to hinder or delay creditors * * *." 24 Am.Jur., Fraudulent Conveyances, Sections 8 through 13. It is sometimes held, for example, that a voluntary conveyance of property without making provisions for creditors, is void or fraudulent per se, regardless of any fraudulent intent on the part of either the transferrer or transferee. 24 Am.Jur., Fraudulent Conveyances, Section 25. However, in the absence of actual fraudulent intent, it is generally held that expenditures made by a husband for improvement of his wife's separate estate, are not deemed fraudulent as to the husband's creditors. 24 Am. Jur., Fraudulent Conveyances, Section 66. In the case under consideration, there is no evidence that the judgment debtor actually intended to hinder, delay or defraud the plaintiff by turning his salary checks over to the defendant. All the evidence is to the contrary. This same practice had been followed since at least 1943, long before the plaintiff's claim arose. None of the usual indicia or badges of fraud are present. There was no secrecy or concealment with respect to the disposition being made of the salary checks, and there was no departure from the judgment debtor's usual method of disposing of the checks after the plaintiff's claim arose.

It is significant that the plaintiff does not allege fraud on the part of either the judgment debtor or the defendant, and stipulated that it was not depending on the statute relating to fraudulent conveyances as a basis for its recovery. The relief sought is to have the defendant declared a constructive trustee for plaintiff's benefit with respect to her husband's funds invested in her property. The plaintiff had a right to select any remedy available to it, and any relief may be granted which is consistent with the allegations in the complaint and embraced in the issues joined, although other and different relief might have been sought. In Sexton v. Farrington, 1923, 185 N.C. 339, 117 S.E. 172, 173, it was held that the action, in view of the theory upon which it was brought, namely, "to have a party declared a trustee," was barred by the lapse, "not of 3, but of 10 years." In Atkinson v. Atkinson, 1945, 225 N.C. 120, 33 S.E.2d 666, 670, the court stated that the plaintiff was entitled to go to the jury upon any cause of action sufficiently stated in the complaint and supported by the evidence. The court then went on to state:

"* * * The appellant does contend that Dr. Atkinson and the defendant acquired title to the property in dispute, and that the defend-

ant now retains it, under circumstances that should constrain the court to declare the defendant trustee of a constructive trust for his benefit, arising ex maleficio. Such a trust is a remedial device, not referred to the intent of the parties, but imposed upon the wrongdoer in invitum, often contrary to the intent to prevent the consummation of the fraud or unconscionable practice. * * *

"While the theory of recovery is definitely based on fraud, actual or constructive, fraud, in terms, is not alleged in the complaint. Counsel say that the facts upon which fraud is predicated are set out in the complaint, and no more is required. * * *

* * * * * *

" * * * As a matter of administration, courts are not, of course, concerned with formal classifications of trusts made by text-writers for convenience in treating the subject, so long as emphasis is permitted to remain on the factual situation out of which the trust arises or upon which it may be declared.

"The plaintiff in a matter of this sort must find his cause of action in the invasion of a property right. Equity takes hold at that point, and proceeds as far as it may within the power and practice of the court to restore the parties to the status quo ante injuriam.

"Not attempting in one impossible definition to put a fence around all instances where the court may, with propriety, declare a constructive trust, we think it safe to say that where it is predicated on fraud in the acquisition of property, or upon fraud, actual or constructive, which, if found, the law will refer to such acquisition, the basis of jurisdiction is the continuance of the equitable interest of the aggrieved person in and to the property of which he has been fraudulently deprived,—an interest which survives the fraud and persists despite the outward form of legality under which it is held and under which the true ownership has been submerged.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Judge Cardozo, in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380."

■ The court is of the opinion that the plaintiff has alleged and shown facts sufficient to have the defendant declared a constructive trustee for its benefit with respect to the $12,000 used to make the down payment on her home, and that the action is not barred by the lapse of time.

■ The defendant finally argues that the plaintiff is not entitled to have her constituted a constructive trustee for the reason that the judgment debtor has never been in trust or confidential relationship with the plaintiff. This argument is also lacking in merit. While it is true that an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another is generally sufficient to warrant the declaration and enforcement of a constructive trust, the scope and application of the rule is not limited to a breach of some trust or confidential relationship. 54 Am.Jur., Trusts, Section 225. The form and variety of constructive trusts are practically without limit, and the breach of some confidential or fiduciary relationship is only one situation justifying the imposition of a constructive trust. 54 Am.Jur., Trust, Section 220.

### Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The defendant is a constructive trustee for the benefit of the plaintiff with respect to the $12,000 used in mak-

ing the down payment on her home in 1953, subject to the $500 personal property exemption of the judgment debtor.

3. The plaintiff is not entitled to have the defendant declared a constructive trustee for its benefit with respect to any funds of the judgment debtor used by the defendant in making payments on her home.

Counsel for the plaintiff will prepare an appropriate decree.